UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS MIGUEL WATSON,<br><br>Defendant. | Case No.  CR05-391RSM<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE |

This matter comes before the Court on the "Motion to Suppress Evidence Obtained From search Of Defendant's Residence" (Dkt. # 340-1), filed by defendant Carlos Miguel Watson.  For the reasons set forth below, the Court denies the motion.

**I. Background**

On November 17, 2005, Seattle Police Department (SPD) detective Daniel Cockbain, then assigned to the Drug Enforcement Administration (DEA) as a deputized Task Force Officer (TFO), was involved in serving a Court-authorized search warrant at the defendant's residence.  This was one of numerous search warrants that were executed as part of this investigation that ultimately led to the indictment of 26 defendants alleged to have been involved in a conspiracy to distribute controlled substances, including marijuana, cocaine, and oxycodone, over a five-year period ending in November 2005.

At the defendant's residence, officers found approximately ½ kilogram of cocaine, some of which was being flushed down the toilet by Mr. Watson as the police entered,

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 1

along with several firearms, including assault-type weapons and ammunition.

Defendant now seeks the exclusion of the abovementioned evidence on Fourth Amendment grounds.  He argues that the 117 page affidavit submitted by Detective Cockbain in support of a search warrant, while it certainly contained sufficient probable cause to search other co-defendant's properties, failed to contain probable cause to search his residence.  Specifically, defendant argues that, of the more than 400+ Court-authorized wiretap conversations included in the detective's affidavit, only five of those conversations involved him.  And, that while those conversations might imply that defendant was "thinking bad thoughts" they also indicate that he simply sought, but never received any drugs from co-defendant Ian Fuhr, the main target of the investigation.  Additionally, the defendant argues, Detective Cockbain's affidavit presented to the magistrate judge, contained an intentional and material omission that warrants a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978).  Therefore, defendant contends that the affidavit was lacking in probable cause to believe that any contraband would likely be found at his residence and any evidence seized should be suppressed.  The government, for its part, contends that a *Franks* hearing is unnecessary and that the sworn affidavit in support of the search warrant states probable cause to search Watson's residence and even if it did not, the search is still sustainable under the "good faith" exception to the warrant requirement.

## II. Discussion

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ."  U.S. Const. amend. IV.  *Illinois v Gates*, 462 U.S. 213 (1983) sets forth the standard of review to be applied by judicial officers in reviewing and approving search warrants.  The Court held in *Gates* that probable cause is a "practical, non-technical conception." *Id* at 232.  Furthermore, "[t]he task of the issuing [judicial officer] is simply to make a

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 2

practical, common sense decision whether, given all of the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id* at 238. In making this determination, the judicial officer is entitled to draw "reasonable inferences" based upon the information set forth in the affidavit. *Id* at 241. Further, the judicial officer is entitled to "rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found." *United States v. Fannin*, 817 F.2nd 1379, 1382 (9th Cir. 1987). Additionally, as stated by the Ninth Circuit in *United States v. Terry*, 911 F.2nd 272, 275 (9th Cir. 1990):

> A magistrate is permitted to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense . . . 'He need not determine that the evidence sought is *in fact* on the premises to be searched . . . or that the evidence is more likely than not to be found where the search takes place . . . The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.'

Furthermore, once made, the probable cause determination is entitled to "great deference" by reviewing courts. *United States v. Alexander*, 761 F.2nd 1294, 1300 (9th Cir. 1985).

**Analysis**

**1.     The Affidavit Establishes Probable Cause to Search Watson's Residence.**

With the foregoing principles in mind, the Court turns to the specific facts of this case. To begin, in this case the magistrate judge who authorized the search warrants was presented with a lengthy and thorough affidavit that summarized in great detail the evidence that had been accumulated during the task force investigation. The affidavit discussed a large drug distribution group with alleged gang ties, which had been dealing substantial amounts of drugs over a three-year period of time. The central figure in this group was identified as Ian Fuhr. This investigation went on for years using standard investigative techniques including information provided by confidential sources, law enforcement surveillance, analysis of toll records and multiple controlled buys. The defendant, Carlos Miguel Watson, apparently first came to the attention of law

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 3

enforcement after May 31, 2005, when Fuhr was contacted and agreed to deliver cocaine to an informant during a controlled buy. Fuhr was observed by law enforcement officers as he traveled directly to and entered into, the Pro Barber Shop, a business that was co-owned by Watson. Detective Cockbain had previously been given information that "one of the co-owners of the barber shop was involved in cocaine trafficking." That informant had apparently identified the other co-owner of the barber shop, Alonzo Chatman as the person involved in drug dealing. However, Detective Cockbain had also been told by another confidential source, that Fuhr had "been seen to meet with Watson during this investigation" and there was no apparent evidence that Chatman had ever had any dealings with Fuhr.

On August 26, 2005, Detective Cockbain obtained a Court order to begin a wire intercept on the two principal phones used by Fuhr to carry out his drug trafficking schemes. That wire intercept lasted until November 5, 2005. Detective Cockbain's sworn affidavit at issue in this case included the results of Fuhr's communications where he arranged drug transactions with several of his coconspirators. Those intercepted communications established that Fuhr delivered drugs in large amounts to multiple drug distributors who then delivered to other customers. The defendant, Carlos Miguel Watson, was intercepted on five separate conversations with Fuhr during the existence of the wire intercept. All of the remaining references to Watson in the search warrant affidavit are drawn from those five calls between Watson and Fuhr.

The thrust of the defendant's argument to suppress is based on his suggested literal reading of the five intercepted conversations wherein it appears that Watson is repeatedly attempting to get Fuhr to deliver drugs to him over that specific ten-week period. Watson argues that there were never any intercepted conversations that show that he, Watson, was ever successful in getting any drugs from Fuhr. Therefore, his argument continues, since there was never any evidence that drugs could be found in his home

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 4

there can be no probable cause to search his residence. Watson contends that even looking at the 117 page affidavit in detail, that his name surfaces so infrequently that it's obvious that he was improperly lumped in together with Fuhr's actual drug distributors.

As noted by the government, the purpose of the wiretap was to flush out the roles of all of the participants in this drug distribution network, and to identify who was involved and who was not. There were only five recorded phone calls between Watson and Fuhr, assuming that those were the only phones that were used by Fuhr at that time, but those conversations must be read in context as reviewed by the magistrate judge. In other words, the only way to truly understand how Fuhr conducted business, and how Watson was involved, was to read the entire affidavit. This type of review shows conclusively that Fuhr was distributing drugs both long before and during the wiretap. Some of the actual deliveries were intercepted, and on other occasions, only the order for the drugs is intercepted. However, the key point is that Fuhr was obviously involved in a long term effort to deliver substantial quantities of illegal drugs to several other individuals for further distribution down the line. The five conversations involving Watson, show that there was a pre-existing relationship between Fuhr and Watson, that the two of them had done "business" before, and that Watson was consistently trying to get more drugs from Fuhr during the pendency of the wiretap. In the affidavit Detective Cockbain notes for the reviewing magistrate judge his special expertise gleaned from years of experience in narcotics investigations and, in particular, sets out his observations gleaned from his ongoing review of these drug related conversations at issue. In this regard, the Ninth Circuit has repeatedly permitted the Courts to rely upon the factual conclusions of law enforcement officers in sustaining probable cause determinations. See, *United States v. Motz*, 936 F.2nd 1021, 1024 (9th Cir. 1991).

In this case, a full and complete review of the affidavit of Detective Cockbain shows that Fuhr was in the business of regularly obtaining multiple kilogram quantities of

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 5

narcotics and distributing those drugs to others on a routine basis.  A common sense reading of the conversations where Watson is intercepted, as well as the reasonable inferences that may be drawn from all of the information in the affidavit as a whole, can only lead to the conclusion that Watson and Fuhr have known each other previously; that Fuhr has repeatedly provided Watson on previous occasions with up to one pound quantities of cocaine "the usual"; that Watson has other people working with him in his drug dealing  "my squad"; that they are all waiting on Fuhr to obtain more drugs for them; and that Watson would be the first person he called once Fuhr received the drugs from his suppliers.  While Fuhr may have failed to live up to his promise that Watson would be the first person that he contacted once he had more drugs, that in no way detracts from the reasonable conclusion that Watson is involved in the drug trafficking business and in a large scale drug conspiracy with Fuhr.   The search warrant affidavit details how, during the last week of the wiretap, additional calls were intercepted indicating that Fuhr was traveling to California to pick up a 10-kilogram supply of cocaine, some of which, based upon the intercepted calls involving Watson, was to go to Watson.  The affidavit also indicated that during the last several days of the wiretap, "while Fuhr's distributors and associates have been waiting for Fuhr to receive an additional large shipment of cocaine, calls indicate they have been maintaining their supply through drugs received from others."  The fact that Watson was waiting to receive his next kilogram of cocaine from Fuhr when the wiretap expired on November 5, and the fact that Fuhr had traveled to California to get it, suggests that it was certainly reasonable to conclude that on November 17, Watson was still involved in the drug business. Moreover, the search warrant did not simply authorize a search for illegal drugs alone, it authorized a search for other items which drug dealers typically maintain, and which this drug trafficking organization was known to maintain, including guns, cash, records of sales and drug trafficking equipment.   As the Ninth Circuit stated in *United States v.*

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 6

*Ocampo*, 937 F.2nd 485 (9th Cir. 1991), "we require only a reasonable nexus between the activities supporting probable cause and the locations to be searched." In this case, given the totality of the circumstances, it was certainly reasonable for the magistrate judge reviewing the affidavit to conclude that probable cause existed and to authorize a search of the defendant's residence.

**2.    A Franks Hearing is Unnecessary.**

The Ninth Circuit has held that a defendant is entitled to a *Franks* hearing if he can "make a substantial preliminary showing that the affidavit contains deliberate or reckless omissions of facts that tend to mislead, and demonstrate that the affidavit supplemented by the omissions would not be sufficient to support a finding of probable cause." *United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir. 1995). First and foremost, when the affidavit is read in its entirety, Watson cannot point to any statements made by the detective that are not true or that deliberately mislead the magistrate judge. There is no necessity for a *Franks* hearing.

**3.    The Evidence Would Still Be Admissible Under the "Good faith" Exception.**

In *United States v. Leon*, 468 U.S. 897, 926 (1984), the Supreme Court ruled that where law enforcement officers act in "objective, reasonable reliance" on a search warrant issued by a "detached and neutral magistrate" ultimately found to be lacking in probable cause, the evidence seized remains admissible. This is so because it's only good policy to give preference to the validity of warrants rather than encourage warrantless searches. The operative question then becomes whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. Only if "no reasonably well-trained officer could have believed that there exists probable cause to search" is suppression of the evidence appropriate. *United States v. Tate*, 795 F.2nd 1487, 1490 (9th Cir. 1988). In the case at bar, there is no evidence whatsoever that Detective Cockbain would have had a reason to doubt the validity of the factual showing

ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE - 7

in support of the warrant. There was no effort to mislead the magistrate judge. The conversations were properly summarized, and portions were quoted from the calls themselves. Even if this Court's previous conclusion that the affidavit contained probable cause to search the defendant's home was incorrect, the evidence would still remain admissible under *Leon.*

### III. Conclusion

For all of the foregoing reasons, defendant's "Motion to Suppress Evidence" is hereby DENIED.

DATED this 8th day of March 2006.

/s/ Ricardo S. Martinez
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE